**In the Matter of Tuon CHEY, Allegedly Mentally Retarded.**

No. C3–85–1386.

Court of Appeals of Minnesota.

Oct. 8, 1985.

Ronald L. Moersch, Hvistendahl & Moersch, Northfield, for appellant Tuon Chey.

Steven Alpert, Rice County Atty., Meredith A. Erickson Asst. County Atty., Faribault, for respondent.

Heard, considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Chey appeals from a June 25, 1985 order finding her to be a mentally retarded person and committing her to Faribault State Hospital. We affirm.

## FACTS

Tuon Chey, a Cambodian refugee, with her mother and sister resettled in Faribault in 1982, after spending several years in a Thai refugee camp. Her right arm was amputated approximately 12 years ago and she has epilepsy.

Chey speaks very little English and is not formally educated. She has been physically abused by her sister, and may have been tortured in Cambodia. In Cambodia, she left her family home for days at a time without explanation. In Faribault, she frequently ran from home into traffic. In Thailand and in Minnesota, she walked or climbed out windows, becoming injured in resulting falls.

Chey was tested by physchologist Penny Zwecker who, while warning that cultural differences could be reflected in the results, concluded Chey had significantly subaverage intellectual functioning. When instructed through an interpreter to identify simple forms, Chey was unable to complete the level of a four-year-old.

Zwecker also spoke with staff at the Park Avenue Group Home, where Chey lived, and observed Chey at the Rice County Day Activity Center, where she attended twice weekly. Using a standard scale, Zwecker testified the deficits in Chey's adaptive behavior, or ability, placed her in the severe range of retardation. While noting some of Chey's skills, including fine motor skills, the skill presence did not alter her conclusion that Chey was a severely retarded person.

The court-appointed examiner, psychologist George Sivanich, spoke with Chey through an interpreter several times and examined available medical records. He testified evidence of Chey's retardation was overwhelming, i.e. climbing out windows and refusal to do simple addition. When asked what two plus two equalled she could not answer, except to say the problem was very difficult, but could count four objects on a table top. Sivanich testified this inability to think abstractly was indicative of mental retardation.

He did not administer an intelligence test, relying on behavior observations, medical records, and Chey's social history, all indicating she was retarded. He concluded Chey's behavior clearly indicated she was retarded, even if no standardized tests were considered, and foresaw problems protecting Chey in any residential placement other than the state hospital.

Appellant relies heavily on the testimony of Robert Riedel, a licensed psychologist with special training in testing, who criticized standardized intelligence testing for cultural bias. Riedel agreed with Sivanich and Zwecker that a diagnosis of mental retardation should be based on a standardized intelligence test result of less than 70 and evidence of low level adaptive functioning. Riedel did not examine appellant, but he estimated her I.Q. at 40 to 50 points. He concluded Chey could not be adequately tested by any American intelligence tests and was unaware of any Cambodian alternative.

Social worker Don Benson is the director of the Day Activity Center attended by Chey. He testified she completed some of her tasks quickly when she chose to cooperate with the program. However, he found her overall behavior consistent with that of other retarded participants.

Social worker Margaret Booe told the court there were no further options for the safe placement of Chey in the community. She explained that Chey frequently ran away from the Park Avenue Group Home and was found in the midst of dangerous traffic. Rice County had tried to help Chey remain with her family, considered relocating the entire family or placing Chey with another Cambodian family, arranged for daytime programming only, and had placed Chey at the Park Avenue Home. Booe

recommended placement at the state hospital.

Loretta Bice, of the Park Avenue Home, testified Chey ran away and into traffic about 20 times. Often, police assistance was necessary to return Chey. Telling Chey not to run into traffic saw no improvement. Finally, the group home installed locks to keep Chey in the house, in violation of applicable licensing requirements.

The trial court found appellant mentally retarded. Although the trial judge noted cultural bias and language problems affecting the intelligence test results, he found Chey had consistently been diagnosed as retarded since hospitalization in Bangkok and her behavior was consistent with that finding. The trial court rejected less restrictive alternatives as inappropriate and committed Chey to Faribault State Hospital.

## ISSUES

1. Was the trial court's finding of mental retardation clearly erroneous?

2. Did the trial court properly reject less restrictive alternatives to commitment at the state hospital?

## ANALYSIS

■ 1. If a trial court finds by clear and convincing evidence that a proposed patient is mentally retarded and finds there is no suitable alternative to commitment, the court must commit the patient to the least restrictive treatment facility which can meet the patient's needs. Minn.Stat. § 253B.09, subd. 1 (1984). The trial court's findings in support of its order for commitment will not be disturbed unless clearly erroneous. *See* Minn.R.Civ.P. 52.01.

A mentally retarded person is:

any person (a) who has been diagnosed as having significantly subaverage intellectual functioning existing concurrently with demonstrated deficits in adapative behavior; and (b) whose recent conduct is a result of mental retardation and poses a substantial likelihood of physical

harm to himself or others in that there has been (i) a recent attempt or threat to physically harm himself or others, or (ii) a failure and inability to provide necessary food, clothing, shelter, safety, or medical care for himself.

Minn.Stat. § 253B.02, subd. 14.

■ Appellant does not dispute the court's finding that she poses a substantial likelihood of physical harm to herself.

Appellant's arguments regarding the validity of test results and diagnosis were raised in the trial court. The court's findings reflect a concern that cultural bias may have rendered the test results imprecise, saying it "carefully considered the testimony of Dr. Riedel as to effect of cultural bias on standardized testing," but concluded the diagnosis of "significantly subaverage intellectual functioning" was credible.

The record shows Chey's "adaptive behavior" is deficient, i.e. falling from windows and repeated running into highway traffic, inability to care for herself, to carry on a simple conversation, and to compose understandable answers to questions, even in her native language. We cannot agree the trial court erred in concluding Tuon Chey was a "mentally retarded person."

■ 2. Appellant argues there have been insufficient efforts to control Chey's running behavior, and that continued group home placement is more appropriate "if appellant's running behavior can be safely controlled." No witness testified that appellant's behavior can be so controlled, but appellant's counsel speculates on appeal the behavior will be responsive to proper medication. Appellant has already been treated with various medications, with little positive result, and with significant side effects and toxicity. An April 1985 report by Hennepin County Medical Center recommended appellant not be medicated to conform to her environment, but proposed placement in a locked ward at the state hospital. The report notes appellant has already suffered toxicity and side effects from medications. Her counsel concedes

the running behavior poses a danger while she remains at the group home, but asserts the danger "could" be modified. These assertions do not convince us the trial court erred in rejecting less restrictive alternatives to state hospital commitment.

## DECISION

The trial court's conclusion is consisent with the recommendations of experts and the record as a whole. The trial court properly committed Tuon Chey to Faribault State Hospital as a mentally retarded person.

Affirmed.